# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

WENDY LOU WYTRWA,

                                    Plaintiff,

        v.                                              5:15-CV-286
                                                        (BKS/ATB)
COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
DAVID L. BROWN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable

Brenda K. Sannes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income

("SSI") Benefits on June 27, 2012, and an application for Disability Insurance Benefits

("DIB") on July 7, 2012, alleging disability beginning February 20, 2008.

(Administrative Transcript ("T") at 19, 177-87).  The applications were denied initially

on October 23, 2012. (T. 100-16).  Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on August 15, 2013. (T. 64-98).

On September 27, 2013, ALJ Roxanne Fuller found plaintiff was not disabled. (T. 16-

38).  The ALJ's decision became the Commissioner's final decision when the Appeals

Council denied plaintiff's request for review on January 9, 2015. (T. 1–6).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering

2

vocational factors such as age, education, and work experience . . . .
Assuming the claimant does not have a listed impairment, the fourth
inquiry is whether, despite the claimant's severe impairment, he has the
residual functional capacity to perform his past work. Finally, if the
claimant is unable to perform his past work, the [Commissioner] then
determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin,*

*Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more

than a scintilla" of evidence scattered throughout the administrative record. *Id.*

However, this standard is a very deferential standard of review " – even more so than

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   **FACTS**

As of the date of the administrative hearing on August 15, 2013, plaintiff was 48 years old. (T. 68). She had four adult children, and resided with her husband and her twelve year old grand-daughter. (T. 280). Plaintiff graduated high school, having attended special education classes for students with dyslexia and difficulties with reading and writing. (T. 280).

Plaintiff's previous employment included work as a delivery driver, waitress, and personal health aide. (T. 190). Most recently, plaintiff was employed as an administrator in an adult residential healthcare facility, with responsibilities that included meeting with patient family members, scheduling medical appointments, coordinating activities, and ordering medication. (T. 69, 72-74, 93, 190, 204, 224). Her

position was terminated when the facility closed in February 2008. Plaintiff did not return to the workforce. (T. 72, 190). She began taking college classes in 2008, and graduated with an Associates Degree in Human Services in 2011. (T. 69-70).

Plaintiff suffered a back injury as a result of a car accident that occurred in approximately 1997. (T. 249, 285). She reported that she had difficulty moving around and walking while she was still employed. (T. 203). Plaintiff, who is 5'4, also had a history of obesity and difficulty managing her weight. (T. 68, 270). At the time of the hearing, plaintiff weighed 320 pounds and had a body mass index of 54.9. (T. 22, 68). As her weight increased, she experienced a corresponding increase in back pain, and found it difficult to sit for extended periods without changing positions. (T. 80, 84, 270).

Plaintiff also reported neck pain, and foot numbness and pain that made it difficult to walk. (T. 68, 239, 285, 337). She was not prescribed any assistive devices, but testified that she used a cane while at home, and a motorized cart while grocery shopping. (T. 77). Plaintiff was able to perform limited household chores, such as sweeping or folding laundry, but did so while seated in a chair with wheels to avoid unnecessary movement or bending. (T. 88). Since 2006, plaintiff had been treated with prescription pain medication and physical therapy. (T. 273, 312, 360). Plaintiff had also been prescribed Xanax to address her anxiety and depression. (T. 84). Plaintiff attributed these mental conditions to her concerns about her declining physical health. (*Id*.).

The ALJ's decision provides a detailed statement of the medical and other

evidence of record. (T. 15-18). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  **THE ALJ'S DECISION**

The ALJ determined that plaintiff met her insured status through September 30, 2012, and that plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 20, 2008. (T. 21). The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: disc herniation, osteoarthritis, degenerative disc disease, left shoulder bursitis, restless leg syndrome, acquired hammer toe, morbid obesity, depression and anxiety. (T. 22-23). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 23-24).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform sedentary work that consisted of simple, routine, and repetitive tasks, with certain additional nonexertional limitations. (T. 24-32). Specifically, plaintiff could never operate foot controls; could never climb ramps or stairs; could never climb ladders, ropes, or scaffolds; could never balance; could only occasionally stoop or crouch; could never kneel or crawl; could do occasional reaching and overhead reaching with the left non-dominant arm; could frequently handle and finger objects with the left non-dominant hand; should have no exposure to moving mechanical parts; could not operate a motor vehicle; and should not be exposed to unprotected heights. (T. 24).

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (*Id.*). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (T. 25).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible in light of the record evidence. (*Id.*). The ALJ next determined that plaintiff would not be able to perform her past relevant work as a personal aide or as a healthcare facility administrator. (T. 32). Relying on the VE testimony, the ALJ found that plaintiff would be able to perform jobs such as document preparer, food and beverage clerk, and call-out operator, all of which were classified as sedentary unskilled occupations. (T. 32-33). Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date, February 20, 2008, through the date of the decision. (T. 34).

V.     **ISSUES IN CONTENTION**

Plaintiff raises the following arguments:

1.     The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 15-19) (Dkt. No. 11).

2       The ALJ's credibility finding was not supported by substantial evidence. (Pl.'s Br. at 19-22).

3.      The ALJ's step five analysis was not supported by substantial evidence because it was based on an incomplete hypothetical question to the VE. (Pl.'s Br. at 22).

Defendant argues that the Commissioner's determination is supported by substantial evidence and should be affirmed. (Def.'s Br. at 6-27) (Dkt. No. 14). For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

## DISCUSSION

**VI.     RFC EVALUATION/TREATING PHYSICIAN**

**A.     Legal Standards**

**1.     RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R

§§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

## B.    Application

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino v. Barnhart*, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that she deemed most consistent with plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole).  In light of the ALJ's detailed analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that her RFC determination was supported by substantial evidence, as summarized below.

### 1.    Physical Limitations

Plaintiff contends that the ALJ did not properly weigh the restrictive opinion of plaintiff's primary treating physician, Dr. Sean Stryker, and thus erred in finding that plaintiff was capable of performing sedentary work. (Pl.'s Br. at 15-19).  This court disagrees, and concludes that the ALJ's RFC assessment of plaintiff's physical impairments was supported by substantial evidence.

The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing SSR 83-10, 1983 WL 31251, at *5).

" . . . [T]he concept of sedentary work contemplates substantial sitting . . ., [and] alternating between sitting and standing may not be within the concept of sedentary work." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citations omitted). An

> "individual [who] may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting . . . is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work. . . . Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will."

SSR 83-12, 1983 WL 31253, at *4.

While the ALJ considered Dr. Stryker's treatment notes as part of her RFC determination, she assigned little weight to Dr. Stryker's opinions regarding plaintiff's functional limitations. On January 22, 2013, Dr. Stryker wrote a letter requesting that plaintiff be excused from seeking employment at that time because, in his opinion, plaintiff was "100% disabled" due to back pain and "difficulties with ambulation and with sitting and/or standing for extended periods." (T. 360). On April 5, 2013, Dr.

Stryker completed an evaluation form for the Schuyler County Department of Social Services, and described plaintiff as "moderately limited" in walking, and standing, and "very limited" in sitting, lifting/carrying, and using stairs or other climbing. (T. 428). In Dr. Stryker's opinion, plaintiff had permanent functional limitations as the result of bulging discs and chronic back pain with radiculopathy. (T. 30, 427-28).

The ALJ provided several reasons for assigning the treating physician's opinion little weight. First, the ALJ cited the lack of treatment notes supporting Dr. Stryker's restrictive opinion. Dr. Stryker examined plaintiff on April 29, 2008, just over two months after the alleged onset date, and described her as being in "no acute distress" and noted that plaintiff had suffered a groin injury during exercise. (T. 267). There was almost a two year gap before plaintiff saw Dr. Stryker again, on February 2, 2010. (T. 270). At that visit, plaintiff attributed her back pain to a corresponding increase in weight, and reported that she was walking more in an attempt to lose weight. (*Id*.). Dr. Stryker found that plaintiff was in no acute distress, and referred her to a dietician to assist with weight management. (*Id*.). At her next visit on June 17, 2010, plaintiff reported aching and cramping in her feet, but also reported that she was walking and doing other exercise on a regular basis. (T. 271).

On October 11, 2010, Dr. Stryker excused plaintiff from physical education classes due to her reported neck and back pain. (T. 273). Plaintiff reported that her back pain increased after walking for more than twenty minutes or doing activities that required lifting or bending. (*Id*.). Dr. Stryker found that she was in no acute distress at the time of his examination, but limited her to no more than fifteen minutes of easy

walking, and no lifting of weight over twenty-five pounds. (*Id*.). Dr. Stryker referred plaintiff to physical therapy, but subsequent notes show that the physical therapist discharged plaintiff after one month due to frequent cancellations. (T. 249-51, 273).

Treatment notes from 2012 include several references to plaintiff's back, neck, and foot pain, as well as edema (fluid buildup) in her legs, but no significant changes to plaintiff's treatment. (T. 246-48). The ALJ also noted a six month gap in the treatment record from this time period. (T. 26). Plaintiff's foot pain showed varying improvement in November and December 2012, although plaintiff did express concerns that her pain medication was not as effective as she hoped. (T. 337). Plaintiff did not complain of any pain during her office visit on January 17, 2013, only five days before Dr. Stryker described plaintiff as "100% disabled" due to back and neck pain. (T. 339, 360).

The ALJ also considered the overall conservative treatment approach taken during Dr. Stryker's treatment relationship with plaintiff as a reason to discount the treating physician's opinion. (T. 28). Plaintiff testified that Dr. Stryker discouraged surgery due to her younger age and the low likelihood of success, but the ALJ noted that there was no indication from plaintiff's medical records that Dr. Stryker gave any significant consideration to surgery or other more aggressive treatment. (T. 28, 74). Finally, the ALJ recognized, as permitted by the regulations, that Dr. Stryker's opinion was that of a general practitioner, and not a specialist.[1] 20 C.F.R. §§ 404.1527(c)(5),

---

[1] Plaintiff argues that the ALJ should have also discounted the non-specialist opinion of Dr. Magurno, who has a family medical practice. However, this court concludes that the ALJ adequately detailed her reasons for assigning more weight to Dr. Magurno's opinons, including its greater consistency with the overall record.

416.927(c)(5) (" We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

The ALJ also relied upon treatment notes from other providers and diagnostic test results that indicated that plaintiff's physical functional limitations were not as restrictive as Dr. Stryker opined. (T. 26-27). For example, while N.P. Machuga observed "some" pain with range of motion in plaintiff's back, she found full quadriceps strength, normal reflexes, no pain during heel/toe ambulation, and a negative straight leg raise during a July 20, 2012 examination. (T. 246-48). Dr. David Halpert, who reviewed plaintiff's January 14, 2013 electromyography report, found only a "mild chronic L4-L5 radiculopathy." (T. 31, 323). Dr. Mokureddy, a pain management specialist who examined plaintiff in February 2013, issued a report that the ALJ described as "essentially unremarkable." (T. 27, 343-44). Dr. Mokureddy found "painless range of motion of all major muscle groups and joints," "grossly normal tone and muscle strength," and normal neurological and spinal exam results. (T. 343). Plaintiff reported that Dr. Mokureddy offered to administer a cortisone injection, but she declined due to a fear of needles. (T. 76).

In reaching her RFC determination regarding plaintiff's physical limitations, the ALJ gave "some weight" to the opinion of Dr. Justine Magurno, who performed a consultative examination of plaintiff on October 1, 2012. (T. 30, 285-89). During the examination, plaintiff complained of severe back pain, chronic neck pain, edema in her legs, as well as pain and numbness in her feet. (T. 285). She did not appear in acute

distress, and demonstrated a slow but mechanically normal gait. (T. 286). Plaintiff did not require an assistive device, but needed help getting off the examination table, and had mild difficulty rising from a chair. (T. 286-87). Her cervical spine had full flexion and extension, and her lumbar spine showed flexion of 40 degrees, extension of 10 degrees, lateral flexion twenty degrees bilaterally, and full rotary movement bilaterally. (T. 287). Her hand and finger dexterity were intact, with full grip strength. (T. 288).

Dr. Magurno gave a stable prognosis and opined that plaintiff had marked limitations for squatting and lifting, moderate limitations for bending and carrying, and mild limitations for walking and standing. (*Id*.). She found no limitations for sitting, reaching, pushing, pulling, and fine motor skills. (*Id*.). The ALJ concluded that these findings were partially consistent with the evidence as a whole, but that plaintiff's medical records documented other physical limitations, such as plaintiff's reduced range of motion in the left shoulder, that were inconsistent with Dr. Magurno's findings. (T. 28, 30, 303, 404).

The ALJ also incorporated plaintiff's activities of daily living into the RFC determination. Plaintiff reported that she could dress herself, with her husband's assistance putting on socks and shoes and with some personal care activities. (T. 29, 215). From a seated position, plaintiff was able to complete household chores, including cleaning, doing dishes, folding laundry, and cooking. (T. 215). The ALJ also noted plaintiff's ability to function outside the home. For example, while plaintiff had not been employed since 2008, she attended college between 2008 and 2011, and obtained an associate's degree. (T. 69). Plaintiff reported that the school made

accommodations for her physical impairments, including allowing her additional time to move between classes. (T. 30, 69-70). Plaintiff also went grocery shopping with her husband, sitting in a motorized cart due to her mobility problems. (T. 282). Because plaintiff was the only member of her household who drove, she also was responsible for transporting her husband and granddaughter to appointments, despite her stated discomfort while driving. (T. 70).

The ALJ explained her reliance upon Dr. Magurno's consultative opinion and plaintiff's daily activities to determine that plaintiff had no limitations with respect to the central requirement for sedentary work, "sitting."[2] *See* 20 C.F.R. § 404.1567(a) ("a sedentary job is defined as one which involves sitting"); SSR 96-9p, 1996 WL 374185, at *3. The ALJ also explained her rationale for discounting Dr. Stryker's more restrictive medical opinion, and her basis for including certain nonexertional limitations in the RFC. Accordingly, the ALJ's physical RFC determination was supported by substantial evidence.

### 2.    Mental Limitations

As noted above, the ALJ limited plaintiff to simple, routine, and repetitive tasks. (T. 31). Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's mental impairments, particularly the evidence regarding plaintiff's difficulties with concentration, persistence, and pace. (Pl.'s Br. at 17). This court disagrees, and concludes that the ALJ's assessment of plaintiff's mental impairments

---

[2] This court also notes that, despite a lengthy treatment history, plaintiff relied solely on her hearing testimony to support Dr. Stryker's opinion that her ability to sit was "very limited." (Pl.'s Br. at 16).

was supported by substantial evidence.

In reaching the mental RFC determination, the ALJ gave great weight to the opinion of the state agency psychological consultant's opinion, because it was consistent with the record as a whole. (T. 31). The consultant, Dr. M. Apacible, reviewed plaintiff's medical records, including the consultative psychiatric examination, and found moderate limitations in plaintiff's ability to carry out detailed instructions and to maintain attention and concentration for extended periods. (T. 31, 113-116). Dr. Apacible also found that plaintiff could follow and understand simple directions and instructions, maintain a regular schedule and learn new tasks, make appropriate decisions, and relate adequately with others. (T. 31, 113-14). A state agency consultant's opinion may be relied upon where it is supported by other record evidence. *See Swan v. Astrue*, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. August 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")

The ALJ also gave "some weight" to the October 1, 2012 opinion of Dr. Cheryl Loomis, who performed a consultative psychiatric examination. Dr. Loomis opined that plaintiff could follow and understand simple directions and instructions, and could perform simple tasks independently. (T. 31-32). In her opinion, plaintiff was able to maintain a regular schedule and learn new tasks, could make appropriate decisions, and could relate adequately to others. (T. 283). The ALJ rejected Dr. Loomis' opinion that plaintiff could not maintain attention and concentration, and could not appropriately

deal with stress.  (T. 32, 283).  She noted that Dr. Loomis described plaintiff's attention and concentration as only "mildly impaired" during the examination, and that Dr, Loomis concluded that plaintiff's symptoms did not appear to be significant enough to interfere with the ability to function on a daily basis.  (T. 32, 282-83).

The ALJ also considered plaintiff's minimal psychiatric treatment history.  (T. 28-29).  At the time of the hearing, plaintiff had only visited a mental health professional once. (T. 430).  At this examination – a self-referral for anxiety and depression in July 2013 – plaintiff was anxious about her family obligations and her health issues, but the examiner did not find any impairments in plaintiff's ability to maintain attention or concentration, or any other cognitive areas. (T. 452).  The ALJ noted that plaintiff had been prescribed Xanax to manage stress since at least 2007, but plaintiff only took this medication on the weekend, because it made her tired.  (T. 29, 435).  Although Dr. Stryker opined that plaintiff would have difficulties performing at a consistent pace in the work place, the ALJ noted the lack of support for this conclusion. (T. 31).  Treatment notes consistently described plaintiff as alert and oriented, with appropriate mood, affect, and demeanor. (T. 29, 241, 244, 246, 272, 333, 336-37, 339, 347).

## VII.  <u>CREDIBILITY</u>

### A.  **Legal Standards**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us

to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function. 20 C.F.R. § 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3).

**B.     Application**

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments were not entirely credible.  (T. 25).  Plaintiff contends that the ALJ failed to support this credibility determination with substantial evidence by failing to adequately consider the seven factors listed above. (Pl.'s Br. at 16).

The ALJ made her credibility determination after concluding that plaintiff's daily activities and the medical evidence were inconsistent with plaintiff's claimed limitations.  (T. 25).  Plaintiff testified that, with certain accommodations, she was able to perform household chores, cook, and go grocery shopping. (T. 77, 88, 215). The ALJ noted that after her alleged onset date, plaintiff was able to attend college classes and graduate. (T. 30, 69-70).  The ALJ also detailed plaintiff's conservative treatment record, which included improvement with inconsistent physical therapy.  (T. 27).  Thus, because the ALJ explained her credibility determination, and this court can determine the rationale of the ALJ's decision, that credibility determination was supported by substantial evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013).

**VIII.  VOCATIONAL EXPERT**

**A.     Legal Standards**

Once the plaintiff shows that he cannot return to his previous work, the Commissioner bears the burden of establishing that the plaintiff retains the RFC to perform alternative substantial gainful work in the national economy.  *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).  In the ordinary case, the ALJ carries out

this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

"If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert[,]" rather than relying solely on the Grids. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (*citing Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). The mere existence of a nonexertional impairment does not automatically require consultation with a vocational expert, nor does it preclude reliance on the Guidelines. *Bapp v. Bowen*, 802 F.2d at 603. The requirement for a vocational expert is triggered when a nonexertional impairment causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id*. at 605-06. The appropriateness of applying the Grids and the necessity for expert testimony must be determined on a case-by-base basis. *Id*. at 605.

If the ALJ utilizes a VE at the hearing, the VE is asked a hypothetical question or

questions which incorporate plaintiff's limitations. Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). The Second Circuit has stated that there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." *Dumas*, 712 F.2d at 1554. *See also Peatman v. Astrue*, No. 5:10-CV-307, 2012 WL 1758880, at *7 n.5 (D. Vt. May 16, 2012) (the hypothetical question posed to the VE must accurately portray the plaintiff's physical and mental impairments) (citations omitted); *Green v. Astrue*, No. 08 Civ. 8435, 2012 WL 1414294, at *18 (S.D.N.Y. April 24, 2012) (citing *Dumas,* 712 F.2d at 1553-54).

### B. Application

Because the ALJ found that plaintiff's non-exertional and exertional limitations would narrow the range of sedentary work that plaintiff could perform, the ALJ used the services of a VE. (T. 92-97). Plaintiff argues that because the ALJ erred with respect to her mental and physical findings, the ALJ's hypothetical question to the VE did not take all of plaintiff's impairments into account. (Pl.'s Br. at 20). However, because this court has found that the ALJ's RFC determination was supported by substantial evidence, her hypothetical question, which mirrored the RFC determination, was similarly supported by substantial evidence. (T. 24, 93-94).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:     April 28, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge